REQUESTED BY: Duane D. Gay, Chairman, Nebraska Public Service Commission, Lincoln, Nebraska.
Assume the following factual situation; a contiguous tract of land under single ownership is intersected by railroad tracks, with 195 acres of the land being to the northeast of the railroad right-of-way and leaving only 1.07 acres lying southwest of the right-of-way. The owner intends to conduct a sand and gravel mining operation on the land. The 1.07 acres southwest of the tracks will not actually be used in the sand and gravel operation as such; but it will be necessary to traverse that portion of the land in order to utilize the only feasible means of access to an existing road situated to the south. There is an existing private crossing over the railroad tracks. It may be anticipated that when the sand and gravel enterprise is in full operation the crossing will be subjected to vehicular and train traffic of such volume and nature as to make advisable and desirable the installation of automatic crossing signals and gates.
The entire area in question is outside of any incorporated municipality.
Does the Nebraska Public Service Commission have jurisdiction and the authority to require the installation of automatic crossing signals and gates and to apportion the costs thereof pursuant to section 75-413, R.R.S. 1943?
No.
Section 77-413 provides:
 "Whenever any person owns land on both sides of the right-of-way of any railroad, such railroad shall provide and keep in repair at least one adequate means for such landowner to cross the right-of-way. Any interested landowner with land on both sides of the right-of-way of any railroad, may file written complaint with the commission against any such railroad that the crossing is not adequate or is unsafe and dangerous to the life and property of those who use the same, and the commission thereupon shall make such investigation, hold such hearing as may be necessary, and shall issue such orders as it shall deem necessary, proper and adequate. If circumstances warrant, the commission may require overhead, underground, or grade crossings, and require wing fences at underground crossings, or may require existing crossings to be relocated so as to be safe to those who use them, but where such special crossing involves an expenditure of more than seven hundred dollars, the landowner shall bear one half the expenses in excess of seven hundred dollars." (Emphasis added.)
Looking only to this section of the statutes, in the event the commission were to determine that the crossing in question was `not adequate or is unsafe and dangerous' unless automatic devices were installed, it might well appear to be within the authority of the commission to require such installation and that the cost thereof be shared between the railroad and the landowner in accordance with the statutory formula. However, we must look beyond section 75-413 to an earlier section of the statutes which delineates the basic jurisdiction of the commission over railroad crossings outside of incorporated municipalities.
In that regard, it will be observed that section75-410, R.R.S. 1943, declares that the commission shall have jurisdiction `over all crossings . . . both public and private, across, over or under all railroads in the state . . . and shall make such rules and regulations for the construction, repair, and maintenance thereof as the commission shall deem adequate and sufficient for the protection and necessity of the public.' Originally, this section contained no express limitation or exception whatsoever. In 1961, however, that section (then section 75-219) was amended so as to add the present language `except as to automatic grade crossing protection devices.' At the same time, the Legislature established the Grade Crossing Protection Fund and vested the Department of Roads with the power to administer such fund and to exercise jurisdiction over the installation of automatic railroad grade crossing protection devices. See sections 39-6,194 and 39-6,195, R.R.S. 1943.
Accordingly, it appears that the Public Service Commission no longer has any jurisdiction or authority with respect to devices such as those referred to in the question above stated irrespective of what power of the Department of Roads might be available for application in the assumed factual situation.
In view of the conclusion just expressed, in the narrow context of the question posed, it is neither necessary nor appropriate that we form any conclusion as to the issue of whether the installation of automatic signals and gates should be installed at the crossing in question; as that is a matter for resolution by authority other than the commission.
Be that as it may, and recognizing the possibility that the commission might have its jurisdiction invoked with respect to this particular crossing in some manner short of a requirement for automatic devices, we invite the attention of the commission to the Iowa case of Klopp v. Chicago, M St. P. Ry. Co., 157 N.W. 230. That case involved an interpretation of the term `adequate crossing,' as used in an Iowa statute relating to railroad track crossings of private land. The Iowa Supreme Court found that the statute did not entitle a landowner to the ultimate in convenience or the most profitable type of crossing but, rather, that the nature of the crossing should be determined with due regard for all interests involved in its construction and maintenance, including a consideration of the reasonable use to which the owner might put the land, the expense entailed, and the effect upon the operation of the railroad as well as the safety of life and property. Although we find no Nebraska Supreme Court opinion on this precise question, it is likely that our court would approve and adopt similar general reasoning.